UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

PATRICK S.,                          )
                                     )
            Plaintiff                )
                                     )
v.                                   )    No. 1:18-cv-00289-DBH
                                     )
NANCY A. BERRYHILL,                  )
Acting Commissioner of Social Security, )
                                     )
            Defendant                )

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD"), Supplemental Security Income ("SSI"), and Child's Disability Benefits ("CDB") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ's mental residual functional capacity ("RFC") determination is unsupported by substantial evidence and that the ALJ erred in failing to consider, or even exhibit, a vocational expert's post-hearing affidavit. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 11) at 3-15. I find no harmful error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through September 30, 2013, Finding 1, Record at 19; that he had the severe impairments of personality disorder, attention deficit hyperactivity disorder ("ADHD"), and substance abuse disorder in remission, Finding 4, *id.*; that he had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: he was limited to performing simple, routine tasks, could not interact with the public as part of his job duties, could have no more than occasional interaction with co-workers on an ongoing basis but could have brief periods of more intensive interaction, including frequent interaction during an initial training period lasting up to 30 days, and was limited to making simple work-related decisions, Finding 6, *id.* at 20-21; that, considering his age (21 years old, defined as a younger individual, on his alleged disability onset date, January 1, 2012), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 8-11, *id.* at 26; and that he, therefore, had not been disabled from January 1, 2012, his alleged onset date of disability, through August 29, 2017, the date of the decision, Finding 12, *id.* at 28. The Appeals Council declined to review the decision, *id.* at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).[2]

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must

---

[2] To be entitled to a CDB award on the earnings record of a wage earner, a claimant who is over 18 and not a full-time student must demonstrate that he has a disability that began before he turned 22. *See* 20 C.F.R. § 404.350. The ALJ determined that there was insufficient medical evidence to assess the plaintiff's condition for the period from his alleged onset date of disability through his 22nd birthday. *See* Record at 22.

be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Mental RFC

The plaintiff first contends that the ALJ's mental RFC determination is unsupported by substantial evidence in three respects: that he (i) relied on opinion evidence that was materially incomplete because it predated an August 2016 evaluation by Luke Douglass, Ph.D., (ii) impermissibly construed raw medical evidence in determining that the plaintiff could briefly tolerate frequent interaction with co-workers, including for purposes of an initial training period, and (iii) impermissibly construed raw medical evidence in evaluating the plaintiff's mental impairments pursuant to recently revised versions of the so-called "paragraph B criteria." *See* Statement of Errors at 3-11. Remand is unwarranted on any of these bases.

#### 1. Import of Douglass Evaluation

Dr. Douglass authored a report dated August 19, 2016, of a mental evaluation he performed pursuant to an order of the Maine Superior Court to "assist with diagnostic clarification and provide associated treatment recommendations" in connection with then-pending Class D and Class E criminal charges against the plaintiff. Record at 663. Based on an interview of the

plaintiff, contacts with his parents, the administration of two psychological tests, including the Minnesota Multiphasic Personality Inventory-II RF ("MMPI"), and a review of materials including treatment notes and jail records, *see id*. at 664, Dr. Douglass concluded:

> From a diagnostic perspective, findings suggest that [the plaintiff]'s presentation is most consistent with an interface between his ADHD, his severe substance abuse problem, and a personality based disorder with cluster B traits. Salient symptoms include his severe substance abuse, history of aggression, impulsivity, lack of remorse, disregard for societal norms, low frustration tolerance, and pronounced tendency to externalize responsibility. [The plaintiff] manifests many of the core characteristics of ADHD, including problems with attention and concentration, impulsivity, inability to follow through on tasks, and severe problems with organization, planning and self-regulation of behavior.

*Id*. at 672. However, Dr. Douglass described his findings with respect to the presence of an anxiety-based disorder as "mixed[,]" noting that, rather than reflecting any elevations of anxiety, the results of MMPI testing indicated that the plaintiff's "profile was consistent with an impulsive and sensation seeking individual who displays antisocial behaviors when feeling bored." *Id*. at 672-73. He stated, "Thus, it may be that [the plaintiff]'s endorsement of severe anxiety could also represent a justification and rationalization for underfunctioning." *Id*. at 673.

The ALJ found that, while Dr. Douglass did not provide an opinion, "his narrative discussion and clinical testing are supportive of the limitations posed in the [RFC]." *Id*. at 25. He elaborated:

> . . . I considered [Dr. Douglass's] analysis during the assessment of the [plaintiff]'s [RFC] and included some significant social limitations. However, the discrepancy between the clinical testing and [the plaintiff's] anxiety related complaints do[es] not support greater limitations. Thus, I find [Dr. Douglass's] narrative discussion persuasive, especially considering he had the opportunity to examine the [plaintiff] and perform tests.

*Id*. (citation omitted).

The ALJ afforded "great weight" to the 2015 RFC assessments of two agency nonexamining consultants, David R. Houston, Ph.D., and Robert Maierhofer, Ph.D., "who opined

4

that the [plaintiff] could understand and remember simple instructions, carry out simple tasks, interact appropriately with co-workers and supervisors, and adapt to simple, routine changes." *Id*. at 24, 97-99 (April 29, 2015, Houston assessment), 133-35 (November 18, 2015, Maierhofer assessment). He explained that Drs. Houston and Maierhofer had reviewed the available evidence through November 18, 2015, including an April 21, 2015, report of agency examining consultant Donna R. Gates, Ph.D., and that "the additional evidence submitted after their review is not supportive of more significant limitations because the [plaintiff] has not alleged any new impairments and the objective clinical findings support stable findings." *Id*. at 24. He added, "Nevertheless, I have included some additional limitations in the [RFC] to account for the [plaintiff]'s subjective complaints of worsening symptoms and the treating source opinions submitted after their review." *Id*. (citations omitted).

The ALJ afforded "great weight" to Dr. Gates' April 21, 2015, opinion that the plaintiff "might have some difficulty relating well to others on the job due to anxiety, social avoidance, and panic features" but "could manage a mild level of stress in a work setting, ha[d] adequate judgment, and could follow work related rules." *Id*. He explained that he found that opinion "persuasive" because, among other reasons, it was consistent with other opinions of record that noted the plaintiff's anxiety-related symptoms but found that he could perform simple tasks. *See id*.

The ALJ gave "partial weight" to opinions of the plaintiff's treating nurse practitioner, Cheryl Drda, MSN, PMHNP-BC, set forth in an undated letter and in two forms dated June 2, 2017 (a mental RFC questionnaire and a medical source statement of ability to perform mental work-related activities). *See id*. at 24-25, 676, 946-53.[3] He explained that he gave "little weight" to NP Drda's opinions insofar as she found that the plaintiff was unable to participate in community

---

[3] NP Drda's medical source statement also was signed by the plaintiff's treating physician, Kevin Kenerson, D.O., who wrote that he agreed with it. *See* Record at 953.

5

service and would miss one day of work per month, but otherwise deemed them "more consistent with the evidence of record." *Id*. at 24. He noted that NP Drda had indicated that the plaintiff was "precluded from performing complex tasks, could perform simple tasks[,] and [could] complete a normal workday and workweek without interruptions from psychological based symptoms." *Id*. at 24-25. He added that he gave "great weight" to NP Drda's finding that the plaintiff had only mild to moderate limitations in the "paragraph B" criteria, which he deemed "consistent with [NP Drda's] own therapy notes, the [plaintiff]'s improvement on medication, and his mild mental status examination findings." *Id*. at 25.

The ALJ, finally, gave "little weight" to a September 22, 2016, opinion of Dr. Houston indicating, for purposes of assessment of the plaintiff's eligibility for MaineCare, that his mental impairments met two of the so-called "Listings," Appendix 1 to 20 C.F.R. Part 404, Subpart P, Listings 12.08 (Personality Disorders) and 12.09 (Substance Addiction Disorders). *Id*. at 25-26, 678.

The ALJ acknowledged that Dr. Houston had provided an earlier opinion, but explained that he gave his 2016 opinion little weight "because he did not provide any analysis, including no paragraph A or B findings[,]" and because his findings were "entirely inconsistent with the [plaintiff]'s positive response to treatment, benign physical examination findings, and . . . improved ability to focus, concentrate, and perform activities of daily living." *Id*. at 25-26. He added that a MaineCare determination is not binding on the commissioner, "especially one with no explanation." *Id*. at 26 (citation omitted).

The plaintiff argues that the ALJ erred in relying on opinions predating the Douglass assessment (the 2015 Houston, Maierhofer, and Gates opinions) when Dr. Houston relied on the Douglass narrative in later deeming him disabled, and the ALJ himself found the Douglass

6

narrative "'persuasive.'" Statement of Errors at 6-7 (quoting Record at 25). He argues that it is "irrelevant" that Dr. Houston provided no analysis as to why his personality disorder met Listing 12.08 because Dr. Houston relied on the Douglass evaluation. *Id*. at 6. He asserts that Dr. Douglass documented the presence of five of the seven diagnostic criteria set forth in the "DSM-IV-TR" for antisocial personality disorder, a minimum of three of which are required to make the diagnosis. *See id*. at 6-7.[4] Accordingly, he contends, the ALJ "should have credited Dr. Houston's 2016 opinion" that his personality disorder met Listing 12.08. *Id*. at 6.

Nonetheless, as the commissioner counters, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 13) at 8-10, the fact that Dr. Houston relied on the Douglass evaluation did not oblige the ALJ to credit the 2016 Houston opinion. As the ALJ noted, *see* Record at 25, Dr. Douglass expressed no opinion as to the plaintiff's mental RFC. Rather, he was called upon, in the context of a state criminal proceeding, to clarify the plaintiff's diagnoses and assist with treatment recommendations. *See id*. at 663. He did so, clarifying that he believed that the plaintiff had a combination of personality disorder, ADHD, and substance abuse and that testing called into doubt his claim that he suffered from severe anxiety. *See id*. at 672-73 The ALJ agreed, observing that, while he took the Douglass analysis into account in including "some significant social limitations[,] . . . the discrepancy between the clinical testing and [the plaintiff's] anxiety related complaints d[id] not support greater limitations." *Id*. at 25.

More importantly, the ALJ supportably discounted the 2016 Houston opinion on the bases that it was both unexplained and at odds with other evidence of record demonstrating the plaintiff's positive response to treatment. *See id*. at 26. Tellingly, as the commissioner notes, *see* Opposition at 9, to the extent that the plaintiff argues that the Douglass narrative supplied the missing Listing

---

[4] "DSM-IV-TR" is shorthand for the American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed., text rev. 2000).

7

12.08 analysis, he does not explain how. Even assuming that he means to suggest that, because his personality disorder met several DSM-IV-TR diagnostic criteria, it also met the "paragraph A" criteria of Listing 12.08, he makes no argument that the Douglass narrative shed light on how his impairment met the "paragraph B" criteria of that listing, *see* Statement of Errors at 7. A claimant's impairment must meet both the "paragraph A" and the "paragraph B" criteria in order to meet Listing 12.08. *See* Listing 12.08.

An ALJ may rely on the opinions of agency nonexamining consultants who have not seen later-submitted evidence when that evidence does not "call into question their conclusions." *Anderson v. Astrue*, No. 1:11-cv-476-DBH, 2012 WL 5256294, at *4 (D. Me. Sept. 27, 2012) (rec. dec., *aff'd* Oct. 23, 2012), *aff'd*, No. 13-1001 (1st Cir. June 7, 2013). *See also, e.g., Strout v. Astrue*, Civil No. 08-181-B-W, 2009 WL 214576, at *8-9 (D. Me. Jan. 28, 2009) (rec. dec., *aff'd* Mar. 5, 2009) (no error in reliance on opinions of agency nonexamining consultants when unseen records were either cumulative of those seen or reflected improvement in claimant's condition and functionality, and unseen treating source opinions reflecting greater restrictions were supportably rejected by ALJ). The ALJ having supportably discounted the 2016 Houston opinion, which was based on the Douglass evaluation, his reliance on opinions predating the Douglass evaluation was not misplaced.

### 2. Finding Regarding "Training Period"

The plaintiff next contends that, in the absence of any supporting expert opinion, the ALJ erroneously interpreted raw medical evidence to find him capable of brief periods of more intensive interaction with co-workers, including an initial training period of up to 30 days. *See* Statement of Errors at 8-9; *see also, e.g., Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) ("[S]ince bare medical findings are unintelligible to a lay person in terms

8

of [RFC], the ALJ is not qualified to assess [RFC] based on a bare medical record."). I conclude that any error in adopting this limitation was harmless.

As the commissioner observes, *see* Opposition at 15, at least two courts have held that a need for more than superficial or occasional contact with a supervisor during a 30-day training period does not undermine a finding that a claimant who is otherwise limited to superficial or occasional contact with a supervisor can perform a job, *see Hemby v. Berryhill*, Case No. 4:15CV1471 ACL, 2017 WL 951785, at *11 (E.D. Mo. Mar. 10, 2017) (rejecting claimant's argument that, because VE "testified that the jobs she cited would require more contact with supervisors during an initial training period, the positions are inconsistent with the RFC found by the ALJ[,]" which called for "only occasional interaction with coworkers and supervisors"; observing that, "under [the claimant's] theory, every time a claimant is limited in his interactions with supervisors, the ALJ would be required to determine that the claimant is entitled to benefits because the training for a job necessarily involves more frequent contact with supervisors"); *Wright v. Comm'r of Soc. Sec.*, No. 1:12CV 1103, 2013 WL 3873947, at *14 (N.D. Ohio July 25, 2013) (rejecting claimant's argument that ALJ "'reverse engineered'" claimant's mental RFC to avoid VE's testimony by adopting carveout of 30-day training period from claimant's need for superficial interaction with supervisors; holding that training-period carveout was not "a finding that Plaintiff's interpersonal capacity was increased during her training for a new job" but, rather, "that her mental RFC could accommodate learning to perform a new occupation").

While, in this case, the training carveout involved the plaintiff's ability to interact with co-workers rather than supervisors, I perceive no material distinction, and the plaintiff's counsel identified none at oral argument.[5]

---

[5] Indeed, at oral argument, the plaintiff's counsel did not address the commissioner's argument on this point at all.

Remand, accordingly, is unwarranted on the basis of this point of error.

### 3. New "Paragraph B" Criteria

The plaintiff next contends that the ALJ erred in making his own layperson's assessment pursuant to new "paragraph B" criteria adopted effective January 17, 2017, after Drs. Houston and Maierhofer rendered their opinions in 2015. *See* Statement of Errors at 10; Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66,138, 66,138 (Sept. 26, 2016) (effective date of January 17, 2017). He asserts that the ALJ reached the "facially absurd" conclusion that he had only mild limitations in his ability to adapt or manage himself despite his personality disorder and incarceration on several occasions for probation violations. Statement of Errors at 10. He argues that the error is not harmless in view of the VE's testimony, in response to his counsel's hypothetical question based on Dr. Douglass's evaluation regarding his personality disorder, that there would be "'[n]o work.'" *Id.* (quoting Record at 70).

As the commissioner rejoins, *see* Opposition at 12, this argument conflates distinct steps in the commissioner's psychiatric review technique. The "paragraph B" criteria pertain to the evaluation at Step 2 of the severity of a claimant's medically determinable mental impairments and at Step 3 of whether those impairments meet or equal a listing. *See* 20 C.F.R. §§ 404.1520a(c)-(d), 416.920a(c)-(d); *Hayes v. Astrue*, No. 2:10-cv-42-DBH, 2010 WL 5348757, at *3 (D. Me. Dec. 20, 2010) (rec. dec., *aff'd* Jan. 18, 2011). If a mental impairment is deemed severe but does not meet or equal a listing, the commissioner must assess a claimant's RFC for purposes of determining, at Steps 4 and 5, whether the claimant can perform past relevant work or other work existing in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3), 404.1545(a)(5), 416.965(a)(5).

While the commissioner amended the "paragraph B" criteria effective January 17, 2017, she did not revise her definition of a claimant's RFC. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) ("We will assess your [RFC] based on all of the relevant medical and other evidence[,]" including "statements about what you can still do that have been provided by medical sources").

Beyond this, the ALJ's finding that the plaintiff had only mild limitations in his ability to adapt or manage himself is supported by substantial evidence. The ALJ relied in part on NP Drda's assessment pursuant to the revised "paragraph B" criteria, co-signed by Dr. Kenerson, that the plaintiff had at most mild limitations in six of eight categories of adapting or managing oneself, and only fair limitations in the remaining two. *See* Record at 24-25, 952-53.

Remand, accordingly, is unwarranted on the basis of this point of error.

### B. Post-Hearing Submission of VE Affidavit

The plaintiff finally argues that the ALJ erred in ignoring a June 29, 2017, affidavit of a different VE, David W. Meuse, M.S., CRC, that his counsel "submitted post-hearing to rebut testimony" of the VE present at his hearing. Statement of Errors at 11, 35-37. Mr. Meuse stated that he did "not expect that a person with the symptoms, traits and personality disorder described by Dr. Douglass could function in a work setting presently and on an ongoing basis" and that he doubted there would be jobs available in the national economy for such a person. *Id*. at 37.

As a threshold matter, the parties dispute whether, in declining to review the ALJ's decision, the Appeals Council considered the Meuse affidavit. After noting that the plaintiff had submitted the Meuse affidavit and two third-party statements, the Appeals Council stated:

> We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence.

*Id*. at 2.

11

The commissioner relies on the first sentence in arguing that, to warrant remand, the plaintiff must demonstrate that the Appeals Council was "'egregiously mistaken'" in determining that there was no reasonable probability that the Meuse affidavit would have altered the outcome of the decision. Opposition at 13 (quoting *Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001)). The plaintiff relies on the second sentence as evidence that the Appeals Council never actually considered the Meuse affidavit. Despite its ambiguity, the Appeals Council's explanation is most sensibly read as the commissioner suggests. The Appeals Council described the evidence submitted to it, including the Meuse affidavit, before stating that it found no reasonable probability that the evidence would change the outcome of the decision. From all that appears, the Appeals Council considered the evidence, although it went on to state that it did not. While, at oral argument, the plaintiff's counsel disputed that the Appeals Council had considered the Meuse affidavit, she did not argue that, if it did, its rationale was egregiously mistaken.

In any event, even if the plaintiff need not make that showing, she falls short of meeting the lesser standard of demonstrating harmful error in the ALJ's omission to address the Meuse affidavit. At the close of the plaintiff's June 20, 2017, hearing, his counsel requested an opportunity to submit a post-hearing memorandum, and the ALJ provided a deadline of June 22, 2017, for its submission. *See* Record at 72. The plaintiff's counsel submitted a post-hearing memorandum dated June 21, 2017, that addressed the VE testimony only insofar as counsel disputed that one of the jobs identified existed in significant numbers. *See id*. at 382-83. Counsel identified no need to submit rebuttal evidence. *See id*. On June 30, 2017, the plaintiff's counsel submitted the Meuse affidavit with a cover letter stating that, "whenever a vocational witness is used, the individual has the right to review and respond to the VE evidence prior to the issuance

of a decision," and asking that the ALJ consider the affidavit his client's "objection and response to the vocational evidence." *Id*. at 35.

The plaintiff contends that he was entitled to submit the Meuse rebuttal evidence pursuant to Social Security Ruling 96-9p ("SSR 96-9p"), 20 C.F.R. §§ 404.935 and 416.1435, which contain the new national version of the so-called "five-day rule," and principles of constitutional due process. *See* Statement of Errors at 11-13. However, as the commissioner observes, *see* Opposition at 17-19, while SSR 96-9p and constitutional due process principles generally confer a right to submit rebuttal evidence, the five-day rule regulates the manner in which it may be done. That rule provides, in relevant part:

> (a) . . . Each party must make every effort to ensure that the [ALJ] receives all of the evidence and must inform us about or submit any written evidence, as required in [§§ 404.1512 and 416.912], no later than 5 business days before the date of the scheduled hearing. If you do not comply with this requirement, the [ALJ] may decline to consider or obtain the evidence, unless the circumstances described in paragraph (b) of this section apply.
>
> (b) If you have evidence required under [§§ 404.1512 and 416.912] but you have missed the deadline described in paragraph (a) of this section, the [ALJ] will accept the evidence if he or she has not yet issued a decision and you did not inform us about or submit the evidence before the deadline because:
>
> (1) Our action misled you;
>
> (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from submitting the evidence earlier; or
>
> (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from submitting the evidence earlier[.][6]

20 C.F.R. §§ 404.935, 416.1435. As the plaintiff notes, *see* Statement of Errors at 12, in promulgating these regulations effective January 17, 2017, the commissioner clarified, in response

---

[6] Sections 404.1512 and 416.912 provide, in relevant part, "You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled[,]" an "ongoing" duty. 20 C.F.R. §§ 404.1512(a), 416.912(a).

to a comment that the proposed rule "did not provide the claimant with an opportunity to submit evidence to rebut other evidence produced at or after the hearing[,]" that, "if an ALJ introduces new evidence at or after a hearing, the claimant could use the exception in 20 CFR 404.935(b)(3) and 416.1435(b)(3) to submit rebuttal evidence[,]" Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process, 81 Fed. Reg. 90,987, 90,987, 90,990-91 (Dec. 16, 2016).[7]

Nonetheless, as the commissioner observes, *see* Opposition at 18, the plaintiff made no showing in submitting the Meuse rebuttal affidavit that an "unusual, unexpected, or unavoidable circumstance beyond [his] control prevented [him] from submitting" that evidence prior to June 30, 2017, *see* Record at 35. Because the plaintiff failed to make the showing necessary to oblige the ALJ to accept the post-hearing evidence, any error in failing to consider or exhibit that evidence is harmless. *See, e.g., Swormstedt v. Colvin*, No. 2:13-cv-00079-JAW, 2014 WL 1513347, at *4 (D. Me. Apr. 16, 2014) (rejecting claimant's challenge to ALJ's refusal to accept late-filed evidence when claimant made "no attempt to demonstrate that she met any of the requirements" of the former five-day rule).[8]

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

---

[7] The plaintiff further contends that, in promulgating the new five-day rule, the commissioner "expressly note[d] that the five[-]day rule limitation on evidence does not apply to rebuttal evidence[.]" Statement of Errors at 12. However, while the commissioner clarified that the five-day rule applied "only to pre-hearing *written statements*, not to post-hearing *written statements*[,]" she stated that a claimant wishing to submit rebuttal *evidence* could use exception (b)(3) to the five-day rule. Ensuring Program Uniformity, 81 Fed. Reg. at 90,991 (emphasis added).
[8] The plaintiff cites *Michael H. v. Soc. Sec. Admin. Comm'r*, 2:17-cv-00447-JAW, 2018 WL 4179317, at *3 (D. Me. Aug. 31, 2018) (rec. dec., *aff'd* Feb. 15, 2019), for the proposition that "[t]his court has recognized that a post-hearing affidavit is an appropriate response to vocational testimony elicited during administrative hearings." Statement of Errors at 12. That is so, but begs the question of the manner in which such evidence must be submitted to the ALJ, a point not at issue in *Michael H*. *See Michael H.*, 2018 WL 4179317, at *2-3 (rebuttal VE affidavit submitted to Appeals Council).

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 13th day of June, 2019.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge